# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 09-80359-CIV-HURLEY

**MAYFAIR HOUSE ASSOCIATION, INC.,**
      **Plaintiff,**

**vs.**

**QBE INSURANCE CORPORATION,**
      **Defendant.**
_____/

### ORDER DENYING in PART & GRANTING in PART
### DEFENDANT'S MOTION TO DISMISS or STRIKE
### PARAGRAPHS 28(b),(l),(m), (n) and 42 of PLAINTIFF'S AMENDED COMPLAINT

**THIS CAUSE** is before the court upon the defendant's motion to dismiss or strike certain portions of the plaintiff's first party bad faith complaint. [DE# 15].  For reasons which follow, the court has determined to grant the motion in part and deny the motion in part.

### I.  Background

This case arises from a property damage claim submitted by plaintiff Mayfair House Association ("Mayfair House") to QBE Insurance Corporation ("QBE") for windstorm damages sustained at plaintiff's condominium property as a result of Hurricane Wilma on October 24, 2005.

Defendant  QBE initially denied  the insured's claim for  damage to certain sliding glass doors and windows.  Accordingly,  on  May 1, 2007, Mayfair House filed and served a civil remedy notice of insurer violation charging QBE with bad faith refusal to promptly and fairly  settle the claim in violation of §§624.155(a)(b)(1) and 626.9541, Florida Statutes.

On June 14, 2007,  Mayfair House  filed  suit for  declaratory judgment in the Fifteenth Judicial Circuit in and  for Palm Beach County, Florida, and  QBE  removed  the action to this court under its diversity  jurisdiction.  *Mayfair House Association, Inc.  v  QBE  Insurance Corporation,*

Case NO. 07-80628-CIV-HURLEY.  On August 2, 2008, this court entered final summary judgment in favor of Mayfair House in that action, making the following declarations of coverage:

> (a) The windstorm damage caused by Hurricane Wilma to the windows and sliding glass doors of the condominium property at issue falls within the scope of coverage provided by the QBE policy, and QBE is therefore obligated to indemnify the Association for this loss.
>
> (b) Defendant QBE breached its contractual obligation to indemnify the Association for this loss by denying the insured's claim for benefits, and the insured was damaged as a consequence of that breach.

The parties subsequently submitted the issue of damages to the appraisal process and an appraisal award in the amount of $121,811.12 ultimately issued.  On December 31, 2008, QBE paid this amount to Mayfair House to indemnify it for the subject loss. [Complaint ¶¶ 20-22].

On March 3, 2009, Mayfair House filed the instant suit charging QBE with bad faith failure to settle the claim under §624.155(1)(b) and unfair claims settlement practices under §626.9541(1)(i), Florida Statutes.  QBE now seeks to dismiss or strike paragraphs 28(b), (l), (m), (n) and 42 of the complaint for failure to state a claim pursuant to Fed. R. Civ P. 12(b)(6).

## II. Standard of Review

In ruling on a motion to dismiss under Rule 12(b)(6), the court must accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff.  *Mills v Foremost, Insurance Co.,* 511 F.3d 1300 (11th Cir. 2008).  Although the complaint need not provide detailed factual allegations, it is not sufficient for plaintiff to merely aver a formulaic recitation of the elements of a claim supported by conclusory labels.  *Watts v Florida Intern. University,* 495 F.3d 1289 (11th Cir. 2007).  Rather, there "must be enough to raise a right to relief above the speculative level" and the complaint must contain enough facts to state a claim that is

2

"plausible on its face." *Bell Atlantic Corp. v Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed.2d 929 (2007).

Further, in ruling on a 12(b)(6) motion to dismiss, the court must confine its inquiry to the four corners of the complaint. *Wilchombe v TeeVee Toons, Inc*., 555 F.3d 949 (11th Cir. 2009). A court may consider only the complaint itself and any documents referred to in the complaint which are central to the claims. *Id*., citing *Brooks v Blue Cross & Blue Shield of Fla., Inc*., 116 F.3d 1364 (11th Cir. 1997).

### III. Discussion

**A. Plaintiff's pre-suit civil remedy notice gave QBE adequate notice of its violations.**

QBE first argues that Mayfair House's complaint fails to establish the requisite elements for filing a bad faith claim under Fla. Stat. § 624.155. Specifically, it contends that Mayfair House's pre-suit civil remedy notice was deficient because it did not contain the specific allegations set out in ¶ 28(b), (l), (m) or (n) or ¶42 of its current complaint, and hence failed to give QBE proper pre-suit notice of the violations and a corresponding opportunity to cure. Because giving sixty days notice is a condition precedent to bringing a statutory bad faith claim, [1] QBE claims

---

[1]
As a condition precedent to bringing a statutory bad faith claim under §624.155, Fla. Stat., the claimant must provide the Department of Financial Services and the insurer 60 days' written notice of the violation alleged. § 624.155(3)(a). Pursuant to §625.155(3)(b), this notice must be "on a form provided by the department," and must "state with specificity" the following information:
1. The statutory provision, including specific language of the statute, which the insurer allegedly violated;
2. The facts and circumstances giving rise to the violation;
3. The name of any individual involved in the violation;
4. Reference to specific policy language that is relevant to the violation, if any;
5. A statement that the notice is given in order to perfect the right to purse the civil remedy authorized by this section.

that the asserted claim must fail.

The challenged portions of ¶28  charge QBE with the following acts and omissions:

28(b)   Failing to pay the undisputed amount of partial or full benefits owed under the subject insurance policy, and other first party property insurance policies, within 90 days after receiving  notice of a residential property insurance claim, without adequate justification for the  delay;

28(l)   Using burdensome and dilatory litigation tactics to prolong the claim process and subject policyholder, and other insured, to additional expense, delay and invasion of privacy.

28 (m)  Delaying policyholder's claim, and other claims, by failing to conduct a reasonable investigation based on available information;

28(n)   Training, evaluating, and promoting adjusters and claims management personnel based on their reduction of claim severity rather than on promptly, fully and fairly paying appropriate indemnity for a covered loss.

The challenged ¶ 42 of the complaint further alleges:

The common experience of policyholder, The Crystal Tower and Saint  Croix Club, combined with the information available from PACER concerning the other litigated cases including but not limited to the Vantage View, Chalfonte, and Buckley Towers cases, strongly suggests that insurer  systematically  withholds the undisputed portions of benefits owed to its insureds, even after the certain changes to Florida Statutes that require payment of these claims within 90 days became effective in 2007 and 2008.  Insurer's conduct in this regard is clearly designed to leverage the financial hardship caused by the underlying windstorm losses, and resulting expense and drawn out litigation, in order to extort a favorable settlement.

In this case, the plaintiff's  pre-suit civil remedy notice [attached to original complaint as Ex. A] was on the correct form and, in conformity with the first requirement of the civil remedy  notice statute,  clearly states that QBE  violated §§ 624.155(1)(b) and 626.9541.(1)(i) and  states the specific language of those statutes  – "not attempting  in good faith to settle claims when, under  all the circumstances  it could and should have done so, had  it acted fairly and honestly toward its

4

insured and with due regard for her or his interests," and "committing or performing with such

frequency as to indicate a general business practice any of the following:

a. failing to adopt and implement standards for the proper investigation of claims;

b. misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

c. failing to acknowledge and act promptly upon communications with respect to claims; denying
claims without conducting reasonable investigations based upon available information;

d. denying claims without conducting reasonable investigations based upon available information;

e. failing to affirm or deny full or partial coverage of claims, and, as to partial coverage, the dollar
amount or extent of coverage, or failing to provide a written statement that the claim is being
investigated, upon the written request of the insured within 3 days after proof of loss statements
have been completed; failing to promptly provide a reasonable explanation in writing to the insured
of the basis in the insurance policy, in relation to the facts or applicable law, for denial of a claim
or for the offer of a compromise settlement;

g. failing to promptly notify the insured of any additional information necessary for the processing
of a claim; or

h. failing to clearly explain the nature of the requested information and the reasons why such
information ins necessary."

QBE apparently takes issue with Mayfair House's effort to satisfy the second requirement

of the civil remedy notice statute. Thus, it contends that the plaintiff's civil remedy pre-suit

notice is deficient because it does not contain all of the specific allegations asserted in its current

first amended complaint at ¶¶ 28(b), 28(l), 28(m), 28(n) and 42.

Although the specific allegations set out in ¶¶ 28 (b), 28 (l), (m) and (n) of plaintiff's

complaint do not appear in the pre-suit notice, they do relate to and expand upon the general

allegations of delay and unfair claims settlement practices charged in the notice.[2]  Observing that an insured is not required to incorporate every allegation from its complaint into its civil remedy notice under §624.155(3)(b), *Tropical Paradise Resorts LLC v Claredon America Insurance Co.*, 2008 WL 3889577 (S.D. Fla. 2008), and that the pre-suit notice here does describe QBE's alleged delay tactics as the event giving rise to the statutory violation, the court concludes that plaintiff's notice form is sufficient, that all conditions precedent to Mayfair House's statutory bad faith claim described at §624.155(3) are satisfied, and that this claim is now ripe.

The court further finds that plaintiff has alleged all elements necessary to assert a cause of action for statutory bad faith. Plaintiff alleges the existence of a prior judicial determination on the existence of coverage, and a prior determination of damages fixed in appraisal. Further, plaintiff alleges that QBE did not respond to its civil remedy notice until March 18, 2008 – more than ten months after its receipt of the civil remedy notice– and did not ultimately make payment on its claim until December 31, 2008 – more than 18 months after its receipt of the civil remedy notice. These allegations are sufficient to state a statutory first party bad faith claim under §624.155. *See e.g. Heritage Corp of South Florida v National Union Fire Ins. Co.*, 255 Fed. Appx. 478 (11th Cir. 2007)(complaint alleging prior determination of liability and extent of damages adequately stated statutory bad faith claim under §624.155, notwithstanding that insurer made $250,000 offer of

---

[2]

Under the section captioned, "brief description of relevant facts and circumstances," the pre-suit notice explicitly states, "[d]espite above quoted policy language [insuring clause], QBE has refused to indemnify complainant for windstorm damage to sliding glass doors and windows. The [sic] appears to be consistent with QBE's well established general business practices of denying, delaying, and taking unreasonable positions in connection with condominium association claims for damages sustained during the 2004 and 2005 hurricane season. Complainant intends to pursue a claim for punitive damages if this violation is not appropriately cured."

judgment during underlying coverage litigation, where offer was not made until nearly a year after insured filed its notice of violation).

**B. The allegations of the complaint are sufficient to state a cause of action for punitive damages under §624.155(5).**

Section 624.155(5), Florida Statutes states:

No punitive damages shall be awarded under this section unless the acts giving rise to the violation occur with such frequency as to indicate a general business practice and these acts are:

(a) willful, wanton and malicious;

(b) in reckless disregard for the rights of any insured; or

(c) in reckless disregard for the rights of a beneficiary under a life insurance contract.

Here, plaintiff alleges that QBE delayed payment and severely undervalued past hurricane claims submitted by Florida condominium associations in order "to leverage the financial hardship caused by the underlying windstorm losses" against the "resulting expensive and drawn out litigation," and that its tactics in this case were consistent with that past pattern and practice of doing business [Complaint ¶42]. It also references an alleged business practice of "promoting adjusters and claims management personnel based on their reduction of claim severity" rather than prompt and fair payment of covered claims. [Complaint ¶28(n)]. In further alleging that these tactics reflect a systematic failure to settle claims in good faith which is consistent with QBE's well established business practices in handling other losses [¶¶30-55], all for the purpose of enhancing profits at the expense of insurance consumers [Complaint ¶56] and that these actions were "intentional, malicious and in reckless disregard of its policyholders 'rights" [Complaint ¶57], the complaint sufficiently states a claim for punitive damages under §624.155(5). *See Scott v Progressive Express*

7

*Ins. Co.*, 932 So.2d 475 (Fla. 4th DCA 2006);  *Marraccini v Clarendon National Ins. Co.*, 2003 WL 22668842 (S.D. Fla. 2003).

### C.  The complaint does not allege impermissible retroactive application of §§627.70131(5)(a),  §626.9541(1)(i)(4).

The complaint alleges that QBE  engages in a general business practice of systematically withholding undisputed  portions of payments on  property damage claims, despite passage of Florida Statutes in 2007 and 2008  requiring  payment of residential property claims within 90 days of notice of claim. [Complaint, ¶¶28(b) and 42].    In its current  motion, the defendant seeks dismissal of the bad faith claim to the  extent it is premised on  impermissible retroactive application of these statutes to the subject property damage claims which were asserted by the insured shortly after October 24, 2005. [3]

The court does not interpret the complaint as attempting to create a §624.155  bad faith action based upon violation of newly enacted §§627.70131(5)(a) and 626.9541(1)(i)(4) which took effect July 11, 2007 and July 1, 2008, respectively.  Thus, to the extent defendant seeks to dismiss complaint for attempting to construct cause of action based on retroactive application of these statutes, its motion to dismiss  shall be denied. .

However, whether the interplay  of these  statutes may  have some limited  relevance to the conduct of the parties in this case after August 2008, when this court issued declaratory judgment on coverage in favor of insured, and  whether QBE's alleged  disregard of  these  statutes in other

---

[3]    Section 627.70131(5)(a) became effective on July 11, 2007.  Section 626.9541(l)(i)(4) became effective on July 1, 2008.   Both statutes require payment  of residential property  claims within 90 days.  However, § 627.70131(5)(a) on its face precludes application to  claims received by insurers  before June 11, 2007.  *Buckley Towers Condominium, Inc. v QBE Ins. Corp*, 2008 WL 2490450 (S. D. Fla. 2008).

cases involving claims  received  after August 2007 may have some relevance to  the punitive damage claim asserted in this case is debatable.  Pending further development of the relevance of these statutes to the conduct of QBE in this case or others, the court shall grant the defendant's alternative motion to strike  the complaint's internal  references to these newly enacted statutes, without prejudice for the parties to renew their arguments  on admissibility and relevance at the time of trial.

### IV.  Conclusion

Based on the foregoing, it is  **ORDERED AND ADJUDGED**:

1.  The defendant's motion to strike [DE# 15] shall be **GRANTED** to the limited extent that the court shall strike  the reference  "within 90 days after receiving notice" set out in ¶ 28(b),  and the reference to "even after the changes to Florida Statues that require payment  of these claims within 90 days became effective in 2007 and 2008" set out in ¶ 42, without prejudice for either party to renew all arguments on the relevancy  and admissibility of these statutes  at the time of trial.

2.  The defendant's motion to dismiss and/or strike ¶ 28(b), (l),(m) and (n) and ¶ 42 of the plaintiff's first amended  complaint [DE# 15]  is otherwise **DENIED.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 14th  day of July, 2009.

_____
Daniel T. K. Hurley
United States District Judge

cc.  All counsel

For updated court information, visit unofficial Web site at http://us.geocities.com/uscts