UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   09-80359- CIV-HURLEY

**MAYFAIR HOUSE ASSOCIATION, INC.,**
    **plaintiff,**

vs.

**QBE INSURANCE CORPORATION,**
    **defendant.**
_____/

**ORDER OVERRULING DEFENDANT QBE INSURANCE CO.'S
OBJECTIONS TO THE MAGISTRATE JUDGE'S
1-5-10 OMNIBUS DISCOVERY ORDER &
1-19-10 ORDER DENYING RECONSIDERATION**

**THIS CAUSE** came before the court upon defendant QBE Insurance Company's appeal from an omnibus discovery order entered January 5, 2010 by Magistrate Judge James Hopkins and subsequent order denying reconsideration entered January 19, 2010 [DE# 82].

**Standard of Review**

A party appealing a magistrate judge's ruling on a discovery matter bears a heavy burden. The district court may reconsider a discovery matter referred to the magistrate judge only if it is clearly erroneous or contrary to law. *Citicorp v Interbank Card Ass'n*, 478 F. Supp. 756, 765 (S.D. N.Y. 1979). A decision is "clearly erroneous" only when the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Matthews v USAir, Inc.*, 882 F. Supp. 274. 275 (N.D.N.Y. 1995). Where there are two plausible views, a decision is not considered "clearly erroneous." *Anderson v City of Bessemer City, N.C.*, 470 U.S. 564 (1985).

Further, in reviewing a discovery order of the magistrate judge, the court does not consider *de novo* arguments of counsel raised and rejected by the magistrate, nor does it consider additional

arguments which do not demonstrate that the decision is clearly erroneous or contrary to law. *Pino v Prudential Ins. Co. of America*, 689 F. Supp. 1358 (E.D. Pa. 1988).

Applying these standards here, the court concludes that the magistrate judge's discovery order is neither clearly erroneous nor contrary to law, and accordingly affirms and adopts it here. *See e.g. Grange Mutual Ins. Co. v Trude*, 151 S. W. 3d 803 (Ky. 2004); *Poneris v Penn. Life Ins. Co.*, 2007 WL 3047232 (S. D. Ohio 2007); *Paolo v Amco Ins. Co.,* 2003 WL 24027877 (N.D. Cal. 2003).[1]  In affirming the compelled production of the subject claim file and certain other insured claim files, the court rests its decision on reasons different than those expressed by the magistrate judge. This opinion sets forth the underlying rationale for compelled production of this discovery.

### Discussion

Plaintiff Mayfair House Association Inc. ("Mayfair House") has filed a one-count complaint against its insurance carrier, QBE Insurance Corporation ("QBE"), alleging statutory bad faith in connection with QBE's denial of plaintiff's claim for coverage of certain windstorm damage to windows and sliding glass doors sustained as a result of Hurricane Wilma on October 24, 2005.

Plaintiff Mayfair House alleges that QBE violated §624.155(1)(b), Fla. Stat. (2007) by "not attempting in good faith to settle [Mayfair's] claim, and other claims, when under all the

---

[1] § 624.155, Fla. Stat. (2007), defines first party bad faith to include, *inter alia*, an insurer's "not attempting in good faith to settle claims when under all the circumstances it could and should have done so had it acted fairly and honestly toward its insured and with due regard for her or his interests." § 624.155(1)(b), Fla. Stat. (2007).
 This statute authorizes imposition of punitive damages where "the acts giving rise to the violation occur with such frequency as to indicate a general business practice" and those acts are "willful, wanton and malicious" or "in reckless disregard for the rights of any insured." § 624.155(5).
 This statute further provides: "Any person who pursues a claim under this subsection shall post in advance the costs of discovery. Such costs shall be awarded to the authorized insurer if no punitive damages are awarded to the plaintiff." § 624.155(5).

circumstances it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for its interests." [2]

Plaintiff Mayfair House also alleges that QBE violated multiple subsections of Fla. Stat. §626.9541(1)(i) by:

a) failing to pay the undisputed amounts of partial or full benefits owed within 90 days of claim, without adequate justification for the delay;

b) failing to adopt and implement standards for the proper investigation of claims;

c) misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue in Mayfair's claim and in other claims;

d) failing to acknowledge and act promptly upon communications with respect to this and other claims;

e) denying the Mayfair claim, and other claims, without conducting reasonable investigation based upon available information;

f) failing to affirm or deny full or partial coverage of the claim or failing to provide written statement that the claim is under investigation upon written request of the insured within 30 days of submission of proof of loss;

g) failing to promptly provide a reasonable explanation in writing to the insured of the basis in the insurance policy, in relation to the facts or applicable law, for denial of a claim or for the offer

---

[2] Section 624.155 provides a civil remedy for any person damaged by an insurer's's conduct, including "[n]ot attempting in good faith to settle claims when, under all the circumstances , it could and should have done so, had it acted fairly and honestly toward its insureds and with due regard for her or his interests." 624.155(1)(b), Fla. Stat. (2007).
A necessary predicate for a statutory bad faith action under this statute is an underlying claim for coverage or benefits or an action for damages which the insured alleges was handled in bad faith by the insurer.
In this case, Mayfair House filed a declaratory judgment action against QBE which resulted in a final summary judgment in favor of the insured on August 29, 2008. *Mayfair House Association Inc. vs. QBE Insurance Corp* , Case NO. 07-80628 -CIV-HURLEY [DE# 39].
Ultimately, the parties submitted to appraisal for assessment of the amount of loss and an appraisal award in the amount of $121,811.12 was executed. Shortly after, on December 31, 2008, QBE tendered a $121,811.12 check to plaintiff to indemnify it for the October 24, 2005 windstorm loss in question. [First Amended Complaint, ¶¶ 20-22].

of a compromise settlement;

h) failing to promptly notify the insured of any additional information necessary for the processing of a claim.

In its initial discovery upon these claims, plaintiff sought production of QBE's claim file in the underlying coverage dispute with Mayfair House, together with the claim files of other insured condominium associations who also litigated windstorm damage claims against QBE arising out of Hurricane Wilma. [Crystal Tower, Inc.; Saint Croix Club of Naples, Inc.; Chalfonte Condominium Association, Inc.; Buckley Towers Condominium, Inc. and Vantage View, Inc.] [Plaintiff's Request to Produce No. 1][DE# 30-2]. In its supplemental response to the request for production of other insured files filed July 6, 2009 [following discovery stay], QBE asserted objection to this request on the basis, *inter alia*, of attorney/client privilege [DE# 82-2].

This assertion in its supplemental response adequately preserved QBE's privilege objection for consideration by the court. To this extent, the court finds error in the magistrate judge's determination that QBE defaulted or waived this objection by failing to incorporate it in its subsequently filed legal memorandum in opposition to plaintiff's motion to compel production of the other insured claim files. Nonetheless, the court affirms the magistrate judge's order compelling production of the other insured claim files, albeit for different reasons, as more particularly set forth below.

In *Allstate Indemnity Co. v Ruiz*, 899 So.2d 1121 (Fla. 2005), the Florida Supreme Court addressed the discoverability of materials in claim and litigation files in the context of both first party and third party insurance bad faith actions under Florida law, clarifying the law in this distinct arena as follows:

4

> [W]e hold that in connection with evaluating the obligation to process claims in good faith under section 624.155, *all materials*, including documents memoranda, and letters, contained in the underlying claim and related litigation file material that was created up to and including the date of resolution of the underlying disputed matter and pertaining in any way to coverage benefits liability or damages should also be produced in a first party bad faith action. Further, all such materials prepared *after* the resolution of the underlying disputed matter and initiation of the bad faith action may be subject to production upon a showing of good cause or pursuant to an order of the court following an *in camera* inspection.

*Ruiz,* 899 So.2d at 1129 (emphasis added).

*Ruiz* specifically subsumes "related litigation file material" within the claim file material within the category of insurer claim files subject to blanket discovery in the insurance bad faith context. Further, in clarifying and settling conflicts in the lower courts refinement of insurance bad faith litigation discovery in the first and third party context, the *Ruiz* court specifically cited and agreed with the approach outlined by the Third District in *Fidelity & Cas. Ins Co of New York v Taylor*, 525 So.2d 908 (Fla. 3d DCA 1987), quoting the following explanatory passage with approval:

> In a "first party" action against an insurance carrier founded upon section 624.155(1)(b), which affirmatively creates a company duty to its insured to act in good faith in its dealings under the policy, liability is based upon the carrier's conduct in processing and paying a given claim.... [A] case like this one is totally indistinguishable from the familiar "bad faith" failure to settle or defend third party's action against a liability carrier's insureds. In those cases, like this one, the pertinent issue is the manner in which the company has handled the suit *including its consideration of the advice of counsel so as to discharge its mandated duty of good faith*. Virtually the only source of information on these questions is the claim file itself. Accordingly... it has been consistently held in our state that a claim file is subject to production in such an action.

*Ruiz,* 899 So.2d at 1129, citing *Taylor,* 525 So.2d at 909-10. (emphasis supplied).

With this backdrop, this court agrees that "all materials" referenced in *Ruiz* necessarily includes materials between the insurance company and its counsel regarding coverage issues, and

5

that after *Ruiz,* "it is clear that Florida recognizes no privileges or limitation with respect to claim file materials in such an action." *Cozort v State Farm Mutual Auto. Ins. Co.,* , 233 F.R.D. 674, 676 (M.D. Fla. 2005)( holding entire claim file discoverable in first party bad faith action over assertion of work product and attorney client privilege).

Stated another way, in *Ruiz* the Florida Supreme Court effectively eliminated the attorney client privilege as a discovery shield in bad faith insurance litigation between an insured and its insurance company with respect to all materials generated prior to resolution of the underlying disputed matter. *See Cozort, supra. See also Shams, Imran Shams v State Farm Mutual Auto Ins. Co.*, 2007 WL 496610 (M..D. Fla. 2007)(applying *Ruiz* in diversity suit under Fed. R. Evid. 501 to defeat assertion of attorney client privilege); *Nowak v Lexington Ins. Co.*, 464 F. Supp. 2d 1241 (S.D. Fla. 2006)(same).[3] *But see XL Speciality Ins. Co. v Aircraft Holdings* LLC, 929 So.2d 578 (Fla. 1st DCA 2006)(confining *Ruiz* to discovery of work product privileged information in first party bad faith actions).

While *Ruiz* addressed the parameters of the discoverability of the insured's own claim file, as "virtually the only source of direct evidence with regard to the essential issue of the insurance company's handling of the insured's claim," this court finds *Ruiz* also informs the discoverability of *other* insured claims files which relate to and illuminate the manner in which the company handles claims of its other policyholders in the general course of its business -- an issue directly bearing on the company's punitive damage liability exposure under statutory language authorizing recovery of such damages where the company's bad faith claims practices occur "with such

---

[3] Other courts in sister jurisdictions adopt a similar approach. See e.g. *Boone v Vanliner Ins. Co.*, 91 Ohio St.3d 2090, 744 N.E.2d 154 (2001)(insured entitled to discover claims files materials containing attorney client communications related to issue of coverage that were created prior to denial of coverage in action alleging bad faith denial of insurance coverage).

frequency as to indicate a general business practice." § 624.155 (5), Fla. Stat. (2007). [4]

Thus, although for reasons different than those stated by the magistrate judge, the court affirms the provision of the omnibus discovery order which compels complete production of the specified other insured claim files with respect to all file materials created up to and including the date of resolution of the underlying disputed matter.

As with the insured's own claim file, the court recognizes that QBE may be entitled to assert attorney-client privilege, and to a lesser extent, work product protection for appropriate documents created *after* the underlying coverage litigation ended in those cases. These documents should be clearly identified as post coverage litigation on a privilege log to be submitted contemporaneously with the balance of required production, with all designated documents described with sufficient specificity to allow for a meaningful evaluation of the applicability of any such privilege or protection.

Based on the foregoing, it is **ORDERED and ADJUDGED:**

1. The defendant QBE Insurance Co.'s objections to the magistrate judge's omnibus discovery order of 1-5-10 and order denying reconsideration of 1-19-20 [DE# 82] are **OVERRULED.**

2. With the qualifications stated above pertaining to production of other insured claim file

---

[4] Because the Florida Supreme Court has not issued a definitive ruling on this distinct issue, this court must predict how the Florida Supreme Court would rule on the applicability of attorney client privilege to *other insured* claim file materials sought in effort to establish an insurance company's general claims handling practices as those practices potentially relate to its statutory punitive damage liability.

Based on the analytical approach outlined in *Ruiz,* and the considerable relevance of other similarly situated insured claim files on the statutory punitive damage issue discussed *infra*, this court predicts that the Florida Supreme Court would interpret *Ruiz* to permit discovery of other insured claim file materials in the insurance bad faith context subject to the same limitations governing discoverability of the insured's own claim file outlined in *Ruiz*.

material generated *after* resolution of the underlying disputed matter, the magistrate judge's omnibus discovery order entered 1-15-10 [DE# 55] is **AFFIRMED and ADOPTED** in all respects.

    3.  To the extent it has not already done so, defendant QBE Insurance Company is directed to produce all documents and other discovery materials responsive to the magistrate judge's 1-15-10 omnibus discovery order [DE# 55] within **TEN (10) DAYS** from the date of entry of this order, subject to the tender of the limited privilege log described above (for post coverage litigation documents).

    **DONE and SIGNED** in Chambers at West Palm Beach, Florida this 5th day of February, 2010.

                                                   Daniel T.K. Hurley
                                         United States District Court Judge

cc. All counsel